# Exhibit 1

## SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs Omar Faruk, Matthew Gannon, Avery Lopez, MD Mannan, Basma Attieh, Nazim Uddin, Luis Jimenez, Scott Guffey, Sterson Baptiste and Victor Latacela (collectively referred to as "Plaintiffs") and Defendants Hat Trick Pizza, Inc.; Cookston Enterprises, Inc.; Mumbah Style Pizza, Inc.; Sestwon Pizza, LLC; 117 Mineola Ave., LLC; 1872A Bellmore Ave., LLC; 1017 Jericho Tpke, LLC; 3489 Riverhead Pizza, LLC; 3469 Mastic Pizza, LLC; 3683 Washington Heights Pizza, LLC; 3456 Hamilton Heights Pizza, LLC; 3342 New Windsor Pizza, LLC; 3361 Monroe Pizza, LLC; 3352 Mount Kisco Pizza, LLC; 3441 Ossining Pizza, LLC; 3488 Cortlandt Manor Pizza, LLC; 3616 West Village Pizza, LLC; 3694 Lower East Side Pizza, LLC; 3551 Yonkers Pizza, LLC; RRACLCL, LLC; Bongo, LLC; 3603 Port Chester Pizza, LLC; 3684 West Side Pizza, LLC; 3354 Washington Heights Two Pizza, LLC; Team Stamford, LLC; AAR, LLC; Lucky 13, Inc.; AC Pizza, Inc.; Bojwee, LLC; 1802 Barnum Avenue Pizza, LLC; 9535 Bridgeport Pizza, LLC; DDND, LLC; Rolling In The Dough, LLC; and Robert Cookston (collectively referred to as "Cookston Defendants") hereby agree upon this Settlement Agreement and Release ("Agreement") as a final settlement of all issues involved herein as follows:

**WHEREAS**, there are now two pending lawsuits alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") on which a final determination on the merits has not yet been made:

Riad Kucher, Haroon Mojumder and Omar Faruk, on behalf of themselves and all other similarly-situated employees v. Domino's Pizza, Inc;, Domino's Pizza, LLC; Domino's Pizza Franchising, LLC; Cookston Enterprises, Inc.; Mumbah Style Pizza, Inc.; Hat Trick Pizza, Inc.; Sestwon Pizza, LLC; 117 Mineola Ave., LLC; 1872A Bellmore Ave., LLC; 1017 Jericho Tpke, LLC; 3489 Riverhead Pizza, LLC; 3469 Mastic Pizza, LLC; 3683 Washington Heights

Pizza, LLC; 3456 Hamilton Heights Pizza, LLC; 3342 New Windsor Pizza, LLC; 3361 Monroe

Pizza, LLC; 3352 Mount Kisco Pizza, LLC; 3441 Ossining Pizza, LLC; 3488 Cortlandt Manor

Pizza, LLC; 3616 West Village Pizza, LLC; 3694 Lower East Side Pizza, LLC; 3551 Yonkers

Pizza, LLC; Team Stamford, LLC; Rolling In The Dough, LLC; AAR, LLC; Lucky 13, Inc.; AC

Pizza, Inc.; Doe Corporations 1-50, and Robert Cookston, in his individual and professional

capacities, pending before the United States District Court for the Southern District of New York

under case number 1:16-cv-02492-AJN-KNF ("The Kucher Action"), and

Matthew Gannon, Avery Lopez, MD Mannan, Basma Attieh, Nazim Uddin, Luis

Jimenez, Scott Guffey, Sterson Baptiste and Victor Latacela v. Domino's Pizza, Inc.; Domino's

Pizza, LLC; Domino's Pizza Franchising, LLC; Sestwon Pizza, LLC; 117 Mineola Ave., LLC;

3469 Mastic Pizza, LLC; 3441 Ossining Pizza, LLC; 3694 Lower East Side Pizza, LLC; 3551

Yonkers Pizza, LLC; Bongo, LLC; and Robert Cookston, in his individual and professional

capacities, pending before the United States District Court for the Southern District of New York

under case number 1:18-cv-00846 ("The Gannon Action") (the Kucher Action and the Gannon

Action are collectively referred to as  the "Actions"); and

**WHEREAS**, an opt-in FLSA collective has been conditionally certified in the

*Kucher* Action and a list of individuals who have opted in[1] are appended hereto as Exhibit A;

**WHEREAS**, Plaintiffs Riad Kucher, Haroon Majumder and Amanul Islam Boby

have already accepted settlements and have released all wage and hour claims and potential

claims brought pursuant to FLSA, NYLL and/or New York Codes, Rules and Regulations

("NYCRR"), and are no longer plaintiffs in the *Kucher* action;

---

[1] The Plaintiffs in the Kucher and Gannon actions and the opt-in plaintiffs in Kucher are
hereinafter collectively referred to as "Plaintiffs/Collective Members."  The Plaintiffs/Collective
Members and the Cookston Defendants are hereinafter collectively referred to as the "Parties."

**WHEREAS**, Domino's Pizza, Inc., Domino's Pizza Franchising, LLC and Domino's Pizza, LLC were dismissed from the Actions following the Court's decisions on their motions for summary judgment and order of the Court dated October 1, 2018 (ECF No. 505);

**WHEREAS**, there has been no motion to certify a Rule 23 class in the *Kucher* Action; and

**WHEREAS**, the *Gannon* Action was not brought as a class action; and

**WHEREAS**, although the Cookston Defendants and all other Defendants strongly deny all of Plaintiffs/Collective Members' claims, charges and allegations in the Actions, and although they strongly deny they have any liability for their treatment of Plaintiffs/Collective Members, Plaintiffs/Collective Members and the Cookston Defendants desire fully and finally to resolve, compromise and settle this dispute on an amicable basis and to avoid the uncertainty, expense and burden of the litigation proceedings in court and any other litigation in any administrative agency or in any court of law which has occurred or will occur between or involving the Parties before they sign this Agreement.

**NOW, THEREFORE,** in consideration of the mutual promises and covenants contained herein, the Plaintiffs/Collective Members and the Cookston Defendants agree as follows:

1. **No Admission of Liability**. The Parties hereto recognize and agree that the Cookston Defendants on behalf of themselves and any Releasees (as defined below), as a part of this Agreement between the Parties, do not admit any violation of law or any liability to the Plaintiffs/Collective Members or to anyone else on any matter, including, but not limited to those matters set forth in the Actions, or which could have been raised in such suits, including those involving Plaintiffs/Collective Members' employment relationship with the Cookston

Defendants and/or the separation of such employment, retaliation for asserting rights under the FLSA or NYLL, wages, overtime, tips, spread of hours, reimbursements, uniform allowances, or compensation paid or owed to Plaintiffs/Collective Members and wage statements reflecting the same.

2. **Dismissal of the Actions**. For and in consideration of the mutual promises outlined in Paragraph 3 and elsewhere in this Agreement, Plaintiffs/Collective Members agree: (1) to dismiss the Actions in their entirety with prejudice against all defendants, or cause to be dismissed with prejudice against all defendants in the Actions without costs or fees to either party; (2) not to re-file these causes of action or file any causes of action released pursuant to Paragraph 4; and (3) to otherwise abide by the terms of this Agreement, including the Release.

3. **Consideration**. The Cookston Defendants agree to pay the combined total sum of one million dollars and zero cents ($1,000,000.00) ("Settlement Payment"), as set forth and allocated below, as well as other good and valuable consideration as described below.

A. **Settlement Fund**. The Cookston Defendants will fully fund an escrow account established by the agreed upon settlement claims administrator, Arden Claims Services ("Arden") ("Settlement Fund") by May 15, 2020.

B. **Payment**. The full amount of the Settlement Payment (as indicated in Paragraph 3) shall be paid as follows. Within thirty (30) days of the Settlement Fund being fully funded or within 30 days of the Court's approval of the Settlement Agreement, whichever is later (provided that no appeals or notices of appeal have been filed), a settlement notice and settlement checks will be sent to each Plaintiff/Collective Member. The settlement checks shall contain a release of claims (described in Paragraph 4), which shall be operative upon each Plaintiff's/Collective Member's endorsement and/or redemption of the check, provided that each

Plaintiff/Collective Member provides their social security number to be used to identify them as a current or former employee of the Defendants.  Plaintiffs/Collective Members shall have twelve (12) months to redeem their settlement checks.  Additionally, within thirty (30) days of the Settlement Fund being fully funded or within 30 days of the Court's approval of the Settlement Agreement, whichever is later (provided that no appeals or notices of appeal have been filed), a check shall be distributed to Wigdor, LLP for its Court-approved fees and expenses, and Arden shall be paid its settlement administration fees. The settlement checks will be payable as follows:

        i. Plaintiffs/Collective Members.  Plaintiffs/Collective Members will all receive a minimum guaranteed payment of two hundred fifty dollars ($250.00) ("Guaranteed Payments"), provided that each Plaintiff/Collective Member provides their social security number to be used to identify them as a current or former employee of the Defendants.  In addition, Plaintiffs/Collective Members will receive the total amount of the Settlement Fund minus all Guaranteed Payments, Court-approved Enhancement Payments (defined below), settlement administration fees, and Court-approved attorneys' fees and costs as set forth below, as well as any legally required deductions ("Net Settlement Fund").  Individual distribution of the Remaining Settlement Fund to Plaintiffs/Collective Members will be determined using the following formula:

        (a) Each Plaintiff/Collective Member shall receive one (1) point for each hour worked from April 4, 2010 to the latest date on which this Agreement is executed by any of the plaintiff-side signatories to the Agreement ("the Relevant Time Period").

        (b) 5% of the Net Settlement Fund shall be allocated to Plaintiffs/Collective Members who worked for Defendants between April 4, 2010 and December

31, 2014, and shall be distributed on a *pro rata* basis based on the number of points accumulated during the time period of April 4, 2010 through December 31, 2014.

(c) 40% of the Net Settlement Fund shall be allocated to Plaintiffs/Collective Members who worked for Defendants between January 1, 2015 and the latest date on which this Agreement is executed by any of the plaintiff-side signatories to the Agreement, and shall be distributed on a *pro rata* basis based on the number of points accumulated during the time period of January 1, 2015 through the latest date on which this Agreement is executed by any of the plaintiff-side signatories to the Agreement.

(d) 40% of the Net Settlement Fund shall be allocated to all Plaintiffs/Collective Members and shall be distributed on a *pro rata* basis based on the number of points accumulated during the Relevant Time Period.

(e) 15% of the Net Settlement Fund shall be allocated to Plaintiffs/Collective Members who worked for Defendants as Delivery Drivers and/or Delivery personnel between April 4, 2010 and December 31, 2015, and shall be distributed on a *pro rata* basis based on the number of points accumulated during the time period of April 4, 2010 and December 31, 2015 in Delivery positions.

ii. 50% of these payments less any legally required deductions, will be regarded as wages, and reported on an IRS Form W-2, and 50% shall be regarded as constituting non-wage income, including payment of potential liquidated damages, penalties and interest, reported on an IRS form 1099 for 2020.

iii. Enhancement Payments:  The following Plaintiffs/Collective Members will seek judicial approval for enhancement awards ("Enhancement Payments") as follows: Omar Faruk: up to $15,000; Basma Attieh: up to $7,500; Sakhayat Hossain: up to $5,000;

Matthew Gannon, Avery Lopez, MD Mannan, Nazim Uddin, Luis Jimenez, Scott Guffey, Sterson Baptiste and Victor Latacela: each up to $1,500.  These payments will be reported on an IRS Form 1099 for 2020.  Any Enhancement Payments sought but not approved by the Court shall become part of the Net Settlement Fund.

iv. Attorney's Fees. A check will be made payable to Wigdor, LLP in the amount that is approved by the Court representing Court-approved fees and costs.  No check will be distributed to Wigdor, LLP without an IRS Form W-9.  This payment shall be reported on IRS 1099-MISC form for 2020 to Wigdor, LLP.  Any attorneys' fees or costs sought but not approved by the Court shall become part of the Net Settlement Fund.

C.      The Parties agree that the payments made pursuant to this Agreement are in order to settle disputed claims.  Moreover, notwithstanding the manner of apportionment, the Cookston Defendants dispute that Plaintiffs/Collective Members are prevailing parties and assert that Plaintiffs/Collective Members would not otherwise be entitled to the consideration paid pursuant to this Agreement, except by virtue of this Agreement.  In the event the Court does not judicially approve this Agreement, this Agreement is void, no payments will be made pursuant to this Agreement, the Cookston Defendants will be entitled to a return of all escrowed funds, and the Parties agree to divide any settlement administration costs that have accrued, to the extent there is any, evenly.  In the event not all Plaintiffs/Collective Members who are signatories execute this Agreement, this entire Agreement shall be null and void as to all Plaintiffs/Collective Members, even those who have executed this Agreement.

D.      The amounts paid pursuant to this paragraph include all monies due or claimed to be due pursuant to any of the claims released under Paragraph 4.

E.      Any amounts from the Settlement Fund that are not redeemed by Plaintiffs/Collective Members within the twelve (12) month period shall be redistributed *pro rata* to the Plaintiffs/Collective Members who redeemed their checks, and each Plaintiff/Collective Member shall have three months to redeem their check from the date the check is redistributed. However, to the extent it is not administratively feasible (*i.e.*, less than $20,000 in unredeemed funds) to redistribute the remainder, it shall be donated to an agreed upon *cy pres* designee who shall be City Harvest.

4.      **Releases**.

A.      In consideration of the promises, payments and actions of the Parties set out in this Agreement and other good and valuable consideration, the receipt of which is hereby acknowledged, the Plaintiffs/Collective Members promise not to sue (to the extent permitted by law) and hereby waive, release, satisfy and discharge, on Plaintiffs/Collective Members' own behalf and on behalf of anyone who could claim by and through Plaintiffs/Collective Members the following:  the Cookston Defendants, as defined above, any of their insurers, predecessors, successors in interest, assignees, parents, subsidiaries, divisions and affiliated or related companies and entities, any entity owned, operated and/or managed, in whole or in part, by Robert Cookston, and any of its/their past and/or present: shareholders, representatives (including legal representatives), owners, attorneys, officers, directors, insurers, supervisors, managers, employees, agents (hereafter collectively referred to as "Releasees"), in their individual and official capacities, and their heirs, of and from any and all claims, damages, debts, losses, demands, obligations, liabilities, fees (including attorney's fees), costs, causes of action, complaints, charges, grievances, complaints or suits arising out of or attributable to the Cookston Defendants' payment of wages or other compensation or fringe benefits to Plaintiffs/Collective

Members, any and all claims for any wage and hour violations, and related retaliation for protected activity concerning wages or hours, under federal, state, and/or local law, including but not limited to, any and all claims for unpaid wages, unpaid overtime, unpaid reimbursement of expenses, unpaid uniform allowances, unpaid minimum wage, retention of tips, spread of hours pay, payment or reimbursement of tips and/or gratuities of any kind, any accrued but unused paid time off of any kind, unpaid spread of hours pay, violation of laws pertaining to wage notices or wage statements, or retention of wage records, or penalties for failure to provide any wage notices pursuant to the FLSA, NYLL, Part 146 of Title 12 of the Official Compilation of Codes, Rules and Regulations promulgated by the Commissioner of Labor pursuant to the Minimum Wage Act (Article 19 of the New York State Labor Law), *as amended*, wage theft statutes, wage statement laws, as well as any claims arising from any express, implied, oral or written contract for wages or other compensation or fringe benefits, fraud, misrepresentation, and all claims for wages, compensation, and any and all other legal or equitable claims relating to payment of wages or other compensation or fringe benefits, whether under any applicable collective bargaining agreement, in contract, express or implied, or in tort, including attorneys' fees, incurred in these matters accruing through the latest date on which this Agreement is executed by any of the plaintiff-side signatories to this Agreement.  Without limiting the foregoing, this Agreement and Release shall specifically apply to all claims due to anything arising out of or attributable to Plaintiffs/Collective Members' compensation, including, but not limited to, all claims alleged in the Actions; unpaid overtime pay, unpaid minimum wage, unpaid reimbursement of expenses, unpaid uniform allowances, spread of hours pay, retention of tips, violation of laws pertaining to wage notices or wage statements or retention of wage related records, and anything which happened before the undersigned Plaintiffs/Collective Members

executed this Agreement, even those wage-related claims which are not known to them, during their respective period of employment with any of the Cookston Defendants, including wage-related claims against Domino's Pizza, LLC, Domino's Pizza Franchising, LLC and Domino's Pizza, Inc. regarding Plaintiffs/Collective Members' employment with any of the Cookston Defendants.

B.      In consideration of the promises, payments and actions of the Parties set out in this Agreement and other good and valuable consideration, the receipt of which is hereby acknowledged, the Cookston Defendants promise not to sue (to the extent permitted by law) and hereby waive, release, satisfy and discharge, on the Cookston Defendants' own behalf and on behalf of anyone who could claim by and through them, all claims known and unknown except for those unknown that result from any fraud or criminal conduct by the Plaintiffs/Collective Members.

5.      **Waiver of Right to Join A Class or Recovery By Third Parties or Government Agencies.**  Plaintiffs/Collective Members hereby specifically acknowledge that this Agreement, and the monies received by Plaintiffs/Collective Members and referenced herein, are a fair and reasonable resolution of a *bona fide* dispute over FLSA and NYLL provisions.  Plaintiffs/Collective Members further agree not only to release the Releasees from any and all claims as stated above in Paragraph 4 which they could make on their own behalf, but also those which may be made by other persons or organizations on their behalf regarding those claims released in Paragraph 4.  Plaintiffs/Collective Members specifically waive any right to become, and promise not to become, a member of any class in which a claim against the Cookston Defendants or any of the Releasees defined herein is made involving any claim released herein up to and including the latest date on which this Agreement is executed by any of

the plaintiff-side signatories to the Agreement, except where such waiver is prohibited by law (and not to the extent such class action includes claims that have not been released herein). Plaintiffs/Collective Members agree to waive all rights to recovery for any damages awarded as a result of any lawsuit or claim or complaint brought by any third party or governmental agency on their behalf or on behalf of their assigns as to any claims released herein.

6. **No Other Claims.** Plaintiffs/Collective Members represent that they have no other complaints or charges against the Cookston Defendants or those persons and/or entities released currently pending before any local, state or federal court, tribunal or administrative agency other than The Actions. Plaintiffs/Collective Members also represent that if any such court, tribunal or agency assumes or has assumed jurisdiction over any such complaint or charge, they shall, within ten days of execution of this Agreement or within ten days of being notified of such pending claim in the event such notification occurs after ten days following execution of this Agreement, request in writing that the court, tribunal or agency withdraw the matter with prejudice and file any necessary stipulations and/or documents necessary in order to effectuate such withdrawals with prejudice. In the event that Plaintiffs/Collective Members are subpoenaed to testify, give evidence or otherwise participate or cooperate in any investigation or other proceeding connected with or resulting from such complaints, lawsuits, claims, demands, appeals or actions, they should immediately notify counsel for the Cookston Defendants of such subpoena by first-class mail to Robin B. Kallor, Esq., Rose Kallor, LLP, 750 Main Street, Suite 1108-3, Hartford, Connecticut 06103. The Cookston Defendants reserve the right to move to quash any such subpoena in a court of competent jurisdiction.

7.     **Settlement Claims Administrator**

A.     The Parties have jointly selected Arden to serve as the Settlement Claims Administrator ("SCA") to mail the settlement notices (the "Notice," a draft of which is attached hereto as Exhibit B) and administer the payment terms of this Agreement.  The Parties will have equal access to the SCA throughout the settlement claims administration period.   Counsel for the Parties shall provide the SCA with all information that may assist the SCA in locating Plaintiffs/Collective Members.

B.     The Administrator shall be responsible for:

i.     preparing, printing and disseminating the Notices to Plaintiffs/Collective Members;

ii.     copying counsel for the Parties on material email correspondence and promptly notifying counsel for all Parties of any material requests or communications made by any party;

iii.     mailing all required tax forms to Plaintiffs/Collective Members and to Wigdor LLP as provided herein;

vi.     setting up the Settlement Fund used for the distribution of all settlement checks to Plaintiffs/Collective Members and to the *cy pres* designee, Wigdor LLP, and Arden;

v.     calculating the amount of each Plaintiffs'/Collective Member's settlement award;

vi.     calculating, notifying counsel for the Cookston Defendants of, and paying the required employer payroll taxes and employer contributions (after receiving said amount(s) from the Cookston Defendants), including specifically paying all applicable payroll

taxes, social security payments, Medicare contributions and other payments traditionally borne by the employer due as a result of the financial terms of this Agreement;

vii.     calculating and paying each Plaintiff's/Collective Member's taxes, deductions and withholdings, and preparing appropriate tax forms for Defendants and for each Class Member;

viii.    preparing and mailing settlement checks to Plaintiffs/Collective Members, checks for Court-approved attorneys' fees and costs to Wigdor LLP, and, if applicable, a check to the *cy pres* designee;

ix.     notifying counsel for the Parties about any Notices that are returned as undeliverable, and if requested, ascertaining current address information and then re-mailing such Notice and settlement checks;

x.     referring to Wigdor LLP all Plaintiffs/Collective Members' inquiries regarding matters not within the SCA's duties specified herein;

xi.     responding to inquiries from counsel for the Parties consistent with the SCA's duties as specified herein;

xii.     promptly apprising counsel for the Parties of the activities of the SCA;

xiii.    maintaining adequate records of its activities, including the dates that each Notice was mailed, that any returned mail was received, and that any other communications and/or attempted communications with Plaintiff/Collective Members occurred;

xiv.    confirming in writing to counsel for the Parties its completion of the administration of the settlement;

xv.     timely responding to communications from the Parties or their counsel;

xvi.     throughout the period of claims administration, providing reports to the Parties regarding the status of the mailing of the Notices of Settlement, the distribution of the Settlement Checks, or any other aspect of the claims administration process; and

xvii.     and any other tasks upon which the Parties mutually agree.

8.      **Responsibility for Taxes**. Plaintiffs/Collective Members and their attorneys assume full responsibility for their respective portion of the payment of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid by Plaintiffs/Collective Members under any federal or state laws of any kind, with respect to the monies paid by the Cookston Defendants pursuant to this Settlement Agreement between the Parties.  The Cookston Defendants shall be responsible for any employer payroll and other taxes traditionally borne by employers arising out of settlement payments that will be allocated on a Form W2, which shall be paid by the Cookston Defendants separate and apart from the Settlement Fund.  Plaintiffs/Collective Members and their attorneys acknowledge and agree that they shall indemnify and hold harmless the Cookston Defendants for any taxes, assessments, penalties or interest payments (with the exception of those arising from the Employer's portion of social security or other taxes traditionally borne by employers) due at any time in connection with or as a result of the taxability of their respective payments made by the Cookston Defendants, provided that the Cookston Defendants have given reasonable notice to Plaintiffs/Collective Members and/or their attorneys, at their last known addresses, of any investigation or inquiry by any state or federal department, service or agency about the settlement payment.

9.      **Governing Law.**  This Agreement is to be construed and governed under the laws of the State of New York, and shall bind the Parties and their respective heirs, estates, successors and assigns.   The Parties agree that this Agreement constitutes the full and complete understanding between them and may not be modified or amended, except in writing, signed by all Parties.   The Plaintiffs/Collective Members acknowledge that they have not relied on any representation, promise or agreement of any kind made to them in connection with their decision to sign and/or enter into this Agreement, except for those set forth in this Agreement.   In the event that any provision of this Agreement is held to be void or unenforceable by a court of competent jurisdiction, the remaining provisions of this Agreement shall nevertheless be binding upon the Parties with the same effect as though the void or unenforceable part had been deleted, provided however, that if the consideration set out in Paragraph 3 is deemed invalid by a court of competent jurisdiction, the entire Agreement shall become void. Each party agrees to execute such amendments as may be necessary to accomplish the intent of this paragraph, which is to maintain in force all terms of this Agreement to the full extent permitted by law.

10.     **Status of Settlement If Case Is Not Ultimately Dismissed**.  In the event the Court fails to dismiss both of the Actions with prejudice as contemplated by this Agreement, this Agreement shall be null and void *ab initio*.  In such case, the Parties shall be returned to their respective statuses as of the date immediately prior to the execution date of this Agreement, and the parties shall proceed in all respects as if the Agreement had not been executed.  The Effective Date of this Agreement shall be the date after the parties receive notice that the Settlement has been approved by the Court and that the Actions are dismissed.

11.     **Attorneys' Fees and Costs.**  It is further agreed that, except as provided herein, each party shall bear their own costs and attorneys' fees incurred in the pending action including negotiating and preparing this Agreement.

12.     **Important Acknowledgments**. It is further understood and agreed that the sum of one million dollars ($1,000,000.00) and the other good and valuable consideration provided for herein, are not a mere recital but are the consideration for this Agreement and all terms herein, and the full and final release effected thereby.  Plaintiffs/Collective Members hereby represent and warrant that they have entered into this Agreement of their own free will and accord, and in accordance with their own judgment, and after consultation with their attorneys, David Gottlieb and Tanvir Rahman of Wigdor, LLP, Plaintiffs/Collective Members hereby state that their counsel have made a full and independent investigation of all the facts and representations relating to this Agreement and Release, and therefore state that they have not been induced to enter into this Agreement by any statement, fact or representation of any kind or character on the part of the Cookston Defendants, or on the part of the Cookston Defendants' agents, attorneys, servants, employees or representatives other than those specifically set forth herein.  Plaintiffs/Collective Members specifically acknowledge that the Parties jointly prepared this Agreement and that Plaintiffs/Collective Members are executing this Agreement knowingly and voluntarily and that this Agreement and the provisions contained herein shall not be construed or interpreted for or against any party to this Agreement because said party drafted or caused the party's legal representatives to draft any of the provisions.

13.     **Settlement Approval Process.**     The Parties agree to file a joint, unopposed motion to the Court seeking approval of this Agreement.  The Parties shall cooperate with each

other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms.

14.     **No Other Representations or Agreements**. Each party acknowledges that, except as expressly set forth herein, no representations of any kind or character have been made by any other party or parties, agents, representatives, or attorneys, to induce the execution of this Agreement.   This Agreement constitutes a single integrated contract expressing the entire agreement of the Parties hereto.   There is no other agreement or understanding, written or oral, expressed or implied, among the parties hereto concerning the subject matter hereof, except the agreements set forth in this Agreement.   The recital clauses contained in this Agreement are incorporated into this Agreement.

15.     **Successors and Assigns.**   The Parties agree that this Agreement shall inure to the benefit of and be binding upon Plaintiffs/Collective Members, their heirs, administrators, representatives, executors, attorneys, insurers, successors and/or assigns, and shall inure to the benefit of and be binding upon the Cookston Defendants, their heirs, administrators, representatives, executors, attorneys, insurers, successors, and/or assigns, officers, directors and shareholders.

16.     **Signatures.** This Agreement may be executed in counterparts that, together, shall constitute one agreement.  Electronic copies of this Agreement, including fax, photocopy and pdf format of signatures to this Agreement shall be as valid and binding as original signatures.

17.     The undersigned Plaintiffs/Collective Members understand, represent and agree that they:

        A.      Have carefully read and fully understand all of the provisions of this Agreement;

B.      Are, through this Agreement and/or the redemption of settlement checks, releasing the Cookston Defendants and all Releasees from any and all wage-related claims that Plaintiffs/Collective Members may have against them relating to Plaintiffs/Collective Members' employment or separation of employment or alleged employment with the Cookston Defendants as set forth above in Paragraph 4;

C.      Knowingly and voluntarily agree to all of the terms set forth in this Agreement;

D.      Knowingly and voluntarily intend to be legally bound by this Agreement;

E.      Were advised to consider the terms of this Agreement with counsel, and have consulted with counsel, Wigdor, LLP, prior to executing this Agreement;

F.      Are duly authorized and have full authority to execute this Agreement;

G.      Before executing this Agreement, were allowed at least twenty-one (21) calendar days to consider their rights and obligations under this Agreement and this period of time was reasonable. The undersigned Plaintiffs/Collective Members understand that any modifications, material or otherwise, made to this Agreement do not restart or affect in any manner the original twenty-one day period; and

H.      Acknowledge and agree that the undersigned Plaintiffs/Collective Members elected to enter into this Agreement and release the Cookston Defendants from any and all claims they may have in exchange for consideration which is in addition to anything of value to which they are already entitled.

On behalf of himself and all Collective Members in *Kucher*

By:     _____
        Omar Faruk

By: _____
Matthew Gannon

By: _____
Avery Lopez

By: _____
MD Mannan

By: _____
Basma Attieh

By: _____
Nazim Uddin

By: _____
Luiz Jimenez

By: _____
Scott Guffey

By: _____
Sterson Baptiste

By: _____
Victor Latacela

For all Cookston Defendants

By: _____
Robert Cookston